UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:13-cv-62-FDW

DE'ANTE OCTARIO HOWARD,           )
                                  )
                                  )
                Plaintiff,        )
                                  )
        v.                        )                    ORDER
                                  )
KEITH A. KUHNE, et al.,           )
                                  )
                                  )
                Defendants.       )
_____)

THIS MATTER comes before the Court on a Motion for Summary Judgment by

Defendants David Guinn and Keith A. Kuhne, (Doc. No. 52), and on a Motion for Judgment on

the Pleadings by Defendant Russell McGallard, (Doc. No. 56).

## I.      BACKGROUND

### A.      Procedural Background

Pro se Plaintiff De'Ante Octario Howard is a North Carolina state court inmate currently

incarcerated at Pasquotank Correctional Institution in Elizabeth City, North Carolina.  On April

16, 2013, Plaintiff filed this action under 42 U.S.C. § 1983, alleging that Defendants were

deliberately indifferent to Plaintiff's serious medical needs while Plaintiff was incarcerated at

Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina, and while he

was incarcerated at Marion Correctional Institution ("Marion") in Marion, North Carolina.

Plaintiff names as Defendants Keith A. Kuhne, a medical doctor with Marion Correctional

Institution; Larry Jones, whom Plaintiff identified as a medical doctor at Alexander Correctional

Institution; David E. Guinn, a physician's assistant at Alexander Correctional Institution; and Russell McGallard, whom Plaintiff identified as Director of the Medical Department at Alexander Correctional Institution. (Doc. No. 1 at 3). Plaintiff's Complaint sought an injunction and compensatory and punitive damages. On March 3, 2015, in an order on separately filed motions to dismiss by Defendants Kuhne and Guinn, this Court allowed Plaintiff's claims for compensatory damages against Defendants Guinn and Kuhne to proceed, but dismissed the claims against them for injunctive and declaratory relief and punitive damages. (Doc. No. 45 at 2).

On December 15, 2015, Defendants Kuhne and Guinn filed the pending summary judgment motion. (Doc. No. 52). On the same day, Defendant McGallard filed the pending motion for judgment on the pleadings. (Doc. No. 56). On December 16, 2015, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 58). Plaintiff has not filed a response to either the summary judgment motion or the motion for judgment on the pleadings, and the time to do so has passed.[1]

**B.    Factual Background**

**1.    Plaintiff's Allegations**

Because Plaintiff has not responded to either pending motion, the Court has before it on summary judgment only the original allegations in his Complaint. In his Complaint, Plaintiff

---

[1] Because Plaintiff did not file a response to the summary judgment motion or the motion for judgment on the pleadings, he is deemed to have abandoned his claims. See Crosby v. Gastonia, 635 F.3d 634, 637 n.3 (4th Cir. 2011). In an abundance of caution, however, the Court will address the merits of Plaintiff's claims.

alleged that he had a scalp condition for which he does not believe he received appropriate treatment.  (Doc. No. 1 at 5-10).  Plaintiff alleged the following in the Complaint in support of his claims against Defendants:

On March 9, 2011, while Plaintiff was incarcerated at Marion Correctional Institution, Defendant Dr. Kuhne examined Plaintiff's scalp, which Plaintiff alleges "was oozing with drainage and very painful."  (Id. at 5).  Plaintiff alleged that when he showed Dr. Kuhne the drainage on his fingers, Dr. Kuhne stated that he "did not see anything and for me to get out of his area."  Plaintiff alleged that he "begged" Dr. Kuhne to give Plaintiff medication "for the drainage and the excruciating pain," but that Dr. Kuhne refused to prescribe Plaintiff anything for Plaintiff's scalp.  Plaintiff alleged that Dr. Kuhne then sought assistance from a correctional officer to take Plaintiff back to his cell.

Plaintiff next alleged that on June 7, 2011, he declared a medical emergency so he could be seen by medical staff because his medical sick call requests had not been answered for three weeks.  Plaintiff was seen by Nurse Moody, who "verified that [Petitioner's] scalp appeared to be infected."  Plaintiff alleged that at that point he "was unable to sleep properly due to swelling and the excruciating pain."  On June 29, 2011, Plaintiff was seen by Marion Correctional head nurse B. Buchanan and Dr. Robert Edwards, who "both made comments that I do in fact have a lot of scabs and my scalp appears infected due to the drainage of puss and blood."  (Id. at 6).

On June 30, 2011, Plaintiff declared a medical emergency for his scalp because he "was still experiencing pain" and had "not received any medication."  Plaintiff alleged that he had only been given T-Gel shampoo and Cleocin topical solution, but these treatments did not help his scalp.  Plaintiff alleged that he was seen by Nurse Roper for his sick call.  Plaintiff showed Nurse Roper his "scalp where it was still leaking puss and blood and the big bumps swelling with

infection on my scalp and my face." According to Plaintiff, although he stated that his pain level was a nine out of ten, he was not given any pain medication.

Plaintiff next alleged that, on July 15, 2011, he was again seen by Dr. Kuhne. Plaintiff showed Dr. Kuhne where Plaintiff's "scalp was still leaking and oozing drainage," and Dr. Kuhne "said that he would get me something for the infection." On July 18, 2011, Plaintiff spoke with Dr. John Morgan about Plaintiff's scalp infection as Dr. Morgan was walking through Plaintiff's cell unit. According to Plaintiff, Dr. Morgan told Plaintiff he would look at Plaintiff's chart and look into prescribing Plaintiff some antibiotics because Plaintiff "needed them." (Id. at 7). On July 22, 2013, Plaintiff received tetracycline, which Nurse Johnson told Plaintiff had been prescribed by Dr. Morgan for Plaintiff's scalp infection.

Plaintiff was transferred to Central Prison in Raleigh, North Carolina, on July 27, 2011. On August 17, 2011, Plaintiff spoke with Dr. Joseph Lightsey about Plaintiff's scalp and Plaintiff showed him "the area that was still swelling and draining puss." Dr. Lightsey prescribed Clindamycin, Septra pills, Cleocin topical solution, and T-Gel and Nizoral shampoo. Dr. Lightsey also gave Plaintiff a medical form, stating that Plaintiff was to wash his hair daily and that the problem "could have been cured with the correct treatment earlier when it first started."

On around February 27, 2012, Plaintiff saw Dr. Pamela Ramsey at Central Prison Mental Health, where Plaintiff showed Dr. Ramsey "the same spot and several others that were draining with puss and blood and where my hair had fallen out in different areas." Dr. Ramsey prescribed Clindamycin to Plaintiff, and she also wrote an order for Plaintiff to continue the shampoos that were already ordered for him.

On July 5, 2012, Plaintiff was transferred to Lanesboro Correctional Institution. On

August 9, 2012, Plaintiff was transferred from Lanesboro to Alexander Correctional Institution. Plaintiff alleged that, while at Alexander, he complained and filled out several medical call requests related to his scalp problems, but that the calls were not answered. Plaintiff alleged that on January 9, 2013, he was seen for a sick call about his eye glasses. During the sick call, Plaintiff showed the nurse his scalp and asked her why he had been refused sick calls. Plaintiff also showed the nurse a stained and soiled shirt that he wore on his scalp to keep the drainage from spreading onto his pillow. The nurse told Plaintiff she would refer him to the prison doctor, whom Plaintiff identifies as Dr. Larry Jones. Plaintiff alleges that the notice would have also included physician's assistant Defendant Guinn. On January 27, 2013, Plaintiff wrote a grievance "about the sick calls I filed not being answered and how my scalp is oozing with drainage and causing me excruciating pain to where I'm unable to sleep comfortably." Plaintiff's grievance was accepted on January 30, 2013.

On January 31, 2013, Plaintiff wrote a letter to Defendant McGallard about not being seen for the sick call requests that Plaintiff had submitted on December 15 and 20, 2012, and January 24, 2013. On February 7, 2013, Nurse Fleming came into Plaintiff's unit to screen another prisoner about a sick call request that prisoner had filed on January 31, 2013, but Plaintiff's sick calls went unanswered. Plaintiff alleges that, on this same day, Defendant Guinn was present on the segregation unit, but that Plaintiff was not examined.

Plaintiff alleged that his letters and grievances filed as exhibits show that "each individual mentioned in this claim . . . had complete knowledge" of Plaintiff's serious medical need, but "chose to act with deliberate indifference." (Id. at 9; 10). Plaintiff alleged more specifically that Defendants Guinn and Dr. Jones had "full knowledge" of Plaintiff's condition because the nurse who screened Plaintiff had told them about it. (Id. at 8-9). Finally, Plaintiff

alleged:

> This ailment I have on numerous occasions requested medical attention and
> shown staff my actual injury, I have requested to see a dermatologist to receive
> adequate medical care for this chronic injury which has not happened.  I am still
> suffering from hair loss[], swelling, drainage, and excruciating pain which makes
> it very difficult for me to sleep comfortably day and night due to this injury.  I
> have given medical staff complete knowledge of my physical ailment verbally,
> physically (showing drainage on my fingers and on a shirt I wear on my head) and
> by writing medical sick call (request) letters and grievances."

(Id. at 9).

### 2.     Evidence on Summary Judgment Presented by Defendants Kuhne and Guinn

### a.     Evidence Related to Plaintiff's Deliberate Indifference Claim Against Defendant Kuhne

In support of their summary judgment motion, Defendants Kuhne and Guinn have

submitted their own affidavits, as well as Plaintiff's prison transfer and medical records.  See

(Doc. Nos. 53; 54).  Defendant Kuhne states in his affidavit that, in March 2011, Plaintiff had

multiple small, non-infected sebaceous cysts (of the oil glands in the skin).  (Doc. No. 53 at ¶ 9:

Kuhne Aff.).  Sebaceous cysts are usually painless, slow-growing, small bumps or lumps under

the skin that are often the result of swollen hair follicles or skin trauma.  They do not usually

become irritated and/or infected unless they are picked or squeezed, and do not usually require

treatment, although drainage may be recommended if there is a build-up of oil, exfoliated skin,

and/or infection.  (Id.).  To treat sebaceous cysts, it is recommended that the cysts are kept clean.

Furthermore, allowing them to air dry and trimming hair can decrease the amount of oil on the

scalp and aid the healing process.  (Id. at ¶ 18).

Defendant Kuhne states in his affidavit that he personally examined Plaintiff on March 9,

2011, but that, contrary to Plaintiff's allegations, Plaintiff did not complain about pain at that time.  (Doc. No. 53 at ¶ 9: Kuhne Aff: Doc. No. 53-5: Ex. 5).  Defendant Kuhne states that he examined and observed the cysts and a small skin tag, but noted no signs of infection, and therefore, determined in his medical judgment that surgery and/or antibiotics were not necessary.  (Id.).  Defendant Kuhne also states that he asked Plaintiff to leave the clinic only after Plaintiff became argumentative.  (Id.).

On July 15, 2011, Defendant Kuhne assessed Plaintiff and noted that he had a tight white "scarf" around his head and also believed that Plaintiff had been squeezing the cysts in an effort to obtain surgical treatment of the cysts.  (Id. at ¶ 18; Doc. No. 53-12: Ex. 12).  Defendant Kuhne instructed Plaintiff to trim his hair to decrease the amount of oil on the scalp to aid in the healing process, refrain from squeezing the sebaceous cysts and from wearing tight-fitting scarves on his head, and to wash his scalp with Betasept soap (antiseptic surgical scrub).  Plaintiff was transferred away from Marion on July 27, 2011, and Defendant Kuhne did not treat Plaintiff again.

**b.      Evidence Related to Plaintiff's Deliberate Indifference Claim Against Defendant Guinn**

With respect to Defendant Guinn, Plaintiff's allegations relate only to treatment occurring after August 9, 2012, when Plaintiff was transferred to Alexander Correctional Institution.  (Doc. No. 1 at 7).  It is undisputed that Defendant Guinn did not treat Plaintiff at any facility other than Alexander.  (Doc. No. 54 at ¶ 4: Guinn Aff.).  Although it is unclear from his Complaint, Plaintiff does not appear to allege that he was never seen by Defendant Guinn at Alexander.  Rather, he alleges that he was not seen by Defendant Guinn in January 2013 or on specific dates, including February 7, 2013.  Specifically, Plaintiff alleges that, while at Alexander, he filed sick

call requests relating to his scalp complaints that went unanswered. (Doc. No. 1 at 7). Plaintiff alleges he saw a nurse on January 9, 2013, for a sick call appointment related to Plaintiff's request for eye glasses and that, during that appointment, Plaintiff raised concerns about his scalp and asked why his sick calls regarding his scalp complaints had not been answered. (Id. at 8). Plaintiff alleges that Defendant Guinn was present on the segregation unit, where Plaintiff was being housed, to see another inmate on February 7, 2013. However, Plaintiff was not evaluated by Defendant Guinn on that day. (Id.).

Defendant Guinn notes in his affidavit that, in the NCDPS, to obtain an appointment in the medical clinic without a regularly scheduled follow-up appointment, an inmate first submits a Sick Call Appointment Request with his complaints. (Doc. No. 54 at ¶ 6). A triage nurse reviews the complaints and then schedules a time for the Sick Call Appointment with a nurse. At the appointment, the nurse assesses the inmate and records his complaints, as well as the nurse's observations, assessments, and plan. The nurse determines at the appointment whether the inmate or his chart is to be seen by another healthcare provider, and makes such referrals, if necessary. An inmate is not scheduled for an appointment with the physician or physician extender[2] unless he is referred by the nurse, nor is the inmate's chart submitted for review by the healthcare provider unless the nurse refers the chart for review. Generally, inmates are not seen or examined by NCDPS physicians or physician extenders in the absence of objective findings documented by the nursing staff that relate to the inmate's subjective complaints in a Sick Call Appointment Request.

Defendant Guinn's Affidavit and the medical records show that on February 14, 2013,

---

[2]  The term "extender" in Defendant Guinn's affidavit presumably refers to a non-physician, health care provider like Defendant Guinn, who is a physician's assistant.

Plaintiff was seen by a nurse in response to a January 24, 2013, sick call appointment request, in which he complained of scalp pain accompanied by drainage. (Id. at ¶ 9; Doc. No. 54-5: Ex. 5). Plaintiff told the nurse he had four or five lesions on his scalp that were painful and draining pus. Plaintiff reported that he had previously used Septra (an antibiotic) and Clindamycin (an antibiotic) shampoo in the past with success, but he claimed that the lesions always returned. (Id.). The nurse noted that Plaintiff appeared to have cysts on his scalp with serosanguineous drainage (composed of serum and blood). The nurse then informed Plaintiff he would be referred to a healthcare provider for treatment. (Id.).

The nurse referred Plaintiff to Defendant Guinn for a physical examination on February 21, 2013, related to his scalp complaints. (Id. at ¶ 10; Doc. No. 54-6: Ex. 6). On that date, Defendant Guinn personally examined Plaintiff and prescribed treatment. (Id.). During Plaintiff's treatment, Defendant Guinn noted the five lesions on Plaintiff's scalp that were "dried," "raised," "tender," and "round." (Id.). Defendant Guinn determined that Plaintiff had candida folliculitis (fungal infection of the hair follicles), and Defendant Guinn ordered 200 mg of Fluconazole (anti-fungal medication) to be taken by mouth every day for three weeks and a follow-up appointment in three weeks. (Id.).

On March 9, 2013, a nurse was called to Plaintiff's cell to assess Plaintiff's complaint of an allergic reaction to Fluconazole. (Id. at ¶ 11). The examining nurse noted that Plaintiff did not have any difficulty breathing or swallowing, and no swelling was observed at that time. The nurse noted that the prison doctor would be informed of Plaintiff's condition. (Id.). On March 10, 2013, a nurse reported that Plaintiff refused to take Fluconazole because he stated that it was causing his lips to swell and his mouth to feel "weird." (Id. at ¶ 12; Doc. No. 54-8: Ex. 8).

Defendant Guinn states that he has no knowledge that Plaintiff's complaints were

referred to him for further evaluation, and Defendant Guinn did not thereafter evaluate Plaintiff for his complaints about an allergic reaction.  (Id.).  Plaintiff was transferred away from Alexander on March 13, 2013, and Defendant Guinn was not involved in any further medical care for Plaintiff.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any

inferences from the evidence in the light most favorable to the nonmoving party. <u>Anderson</u>, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" <u>Ricci v. DeStefano</u>, 129 S.Ct. 2658, 2677 (2009) (quoting <u>Matsushita v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

As for the motion to judgment on the pleadings filed by Defendant McGallard, a motion for judgment on the pleadings pursuant to Rule 12(c) raising the defense of failure to state a claim upon which relief can be granted is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. <u>Francis v. Giacomelli</u>, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions.'" <u>Twombly</u>, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." <u>Eastern Shore Mkts. v. J.D. Assocs. Ltd.</u>, 213 F.3d 175, 180 (4th Cir. 2000). A trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

## III.  DISCUSSION

### A.  Plaintiff's Claim of Deliberate Indifference to Serious Medical Needs As to

**Defendants Kuhne and Guinn**

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id.

at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

Plaintiff has sued Defendants in both their individual and official capacities. The Court first finds that, to the extent that Defendants have been sued in their official capacities, the Eleventh Amendment bars Plaintiff's suit for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844 (4th Cir. 2003). Next, as to Plaintiff's claim against Defendants in their individual capacities, Plaintiff has not presented evidence on summary judgment to raise a genuine issue of material fact as to whether Defendants Kuhne and Guinn were deliberately indifferent to Plaintiff's serious medical needs. As the affidavits of Defendants Kuhne and Guinn demonstrate, Defendants Kuhne, Guinn, and other healthcare providers assessed Plaintiff numerous times in response to Plaintiff's complaints, and several medications were prescribed to treat his scalp condition. Various health care providers appropriately treated and monitored Plaintiff's skin condition. (Doc. No. 53 at ¶ 23; Doc. No. 54 at ¶ 14).

More specifically, as to Defendant Kuhne, Plaintiff alleges that Defendant Kuhne was deliberately indifferent to his medical needs by failing to treat an infection of his scalp and failing to prescribe him pain medication for the same. However, based on Plaintiff's symptoms, Dr. Kuhne's review of his chart, and Dr. Kuhne's personal examinations, Defendant Kuhne did not believe treatment and/or medications other than those prescribed to Plaintiff were medically

necessary. During Defendant Kuhne's treatment of Plaintiff, Defendant Kuhne conducted chart reviews and physical examinations, and he ordered and renewed Plaintiff's prescriptions. At no time did Defendant Kuhne disregard Plaintiff's symptoms. To the contrary, Defendant Kuhne took appropriate action and made professional decisions and treatment plans based on Plaintiff's complaints. (Doc. No. 53 at ¶ 23).

Between March 9, 2011, and July 27, 2011, while Plaintiff was incarcerated at Marion, Defendant Kuhne personally examined Plaintiff on at least two occasions. Furthermore, nurses also examined Plaintiff on at least four occasions for sick-call appointments and on at least three occasions for inmate-declared emergencies. Nurse practitioner John Morgan also personally examined and reviewed Plaintiff's chart on at least one occasion. (Doc. No. 53 at ¶ 23). Moreover, while incarcerated at Marion, Plaintiff was prescribed the following medications for his scalp condition: Clindamycin (Cleocin T), Benzoyl Peroxide lotion, T-Gel, Betasept soap, and Tetracycline. Here, based on Plaintiff's presentation and the lack of signs of infection or pain complaints during his treatment of Plaintiff, Defendant Kuhne did not prescribe pain medication and treated the sebaceous cysts conservatively, rather than recommending surgical excision or drainage. (Id.).

Based on Defendant Kuhne's medical judgment, Defendant Kuhne believed that keeping the cysts clean and trimming hair would decrease the amount of oil on the scalp and aid the healing process. When Plaintiff's cysts showed signs of drainage, Defendant Kuhne ordered Plaintiff to wash the cysts with antiseptic surgical soap (Betasept), to keep the cysts clean, and ordered that he refrain from wearing tight-fitting scarves on his head to let the cysts air dry. (Id. at ¶ 18). Dr. Kuhne also instructed Plaintiff to cut his hair, but Plaintiff was non-compliant with this instruction.

Following Defendant Kuhne's care of Plaintiff, another healthcare provider observed that Plaintiff may have been sabotaging his treatment by squeezing the cysts. The healthcare provider notes that Plaintiff's sebaceous cysts appeared inflamed and somewhat infected and he was provided with an antibiotic. (Id. at ¶ 20). Regarding his complaints of pain, Plaintiff was given Ibuprofen on two occasions.

Plaintiff also alleged in the Complaint that on March 9, 2011, Defendant Kuhne "acted with deliberate indifference by telling [him] to get out of his area" and by not prescribing anything for pain. (Doc. No. 1 at 5). Defendant Kuhne has presented evidence on summary judgment showing that, contrary to Plaintiff's allegations, Defendant Kuhne personally examined Plaintiff on March 9, 2011, and Plaintiff did not voice any complaints of pain at that time. (Doc. No. 53 at ¶ 9; Doc. No. 53-5 at 2: Ex. 5). Since Plaintiff did not respond to the summary judgment, Plaintiff has offered nothing to rebut this evidence presented by Defendant Kuhne. Defendant Kuhne examined and observed the cysts and a small skin tag, but noted no signs of infection, and therefore, determined in his medical judgment that surgery and/or antibiotics were not necessary at that time. (Id.). Plaintiff was asked to leave the clinic only when he became argumentative, which does not rise to the level of deliberate indifference. (Id.).

Plaintiff's mere disagreement with Dr. Kuhne's choice of medical treatment does not rise to the level of deliberate indifference, and it was within Dr. Kuhne's medical judgment to make decisions regarding Plaintiff's scalp condition and to pursue non-surgical options to treat Plaintiff's sebaceous cysts, and to not prescribe pain medication when he believed it was not warranted. See Faison v. Lightsey, No. 5:09-CT-3179-D, 2011 WL 4589973, at *6 (E.D.N.C. Sept. 30, 2011) (granting summary judgment for prison physician because prison physician's substitution of one pain medication for another recommended by consulting oral surgeon "did

not rise to a level of deliberate indifference"); see also Yagman v. Johns, No. 5:08-CT-3089-FL, 2010 WL 7765708, at **5-6 (E.D.N.C. Mar. 29, 2010) (plaintiff's preference for alternative medication, where plaintiff alleged that medication prescribed by prison physician caused harmful side effects, was not sufficient to state Eighth Amendment claim), aff'd, 397 F. App'x 841 (4th Cir. 2010).

Finally, Plaintiff has not raised any evidence on summary judgment to rebut Defendants' evidence showing Dr. Kuhne's actions were justified and were not committed with a "culpable state of mind," that is required for § 1983 liability to result. Defendant Kuhne cannot be held liable for being deliberately indifferent to Plaintiff's serious medical needs unless he knew of and disregarded an excessive risk to Plaintiff's health or safety. Here, there was simply never an excessive risk to Plaintiff's health or safety, as Plaintiff received prompt treatment for his chronic pain and other medical conditions, and he was being consistently treated by healthcare providers. In sum, Plaintiff has not raised an issue of fact as to whether Defendant Kuhne was deliberately indifferent to Plaintiff's serious medical needs.

As to Plaintiff's allegations against Defendant Guinn, the evidence on summary judgment shows that between December 27, 2012, (Plaintiff's first scalp-related complaint at Alexander) and March 13, 2013 (the date of his transfer to Maury), Defendant Guinn personally examined Plaintiff on at least one occasion related to his scalp condition. During that time, nurses examined Plaintiff on at least one occasion for a sick-call appointment related to his alleged scalp condition, and at least two occasions in his cell and/or for inmate-declared emergencies. Contrary to Plaintiff's allegations, Defendant Guinn has presented evidence on summary judgment showing that he took appropriate action and made professional decisions and treatment plans based on Plaintiff's complaints. (Doc. No. 54 at ¶ 14).

Furthermore, while incarcerated at Alexander during the relevant time period, Plaintiff was noncompliant with his medical care and failed to present for at least one scheduled appointment for his complaint of scalp pain. Plaintiff was referred to Defendant Guinn on one occasion for complaints of scalp lesions in connection with a sick-call appointment on February 14, 2013, and was not referred to Defendant Guinn before that date. (Id. at ¶ 9). As noted, the nursing staff schedules appointments with health care providers and refers patients after sick-call appointments. (Id. at ¶ 6). Defendant Guinn assessed Plaintiff with candida folliculitis (a fungal infection of the hair follicles) and ordered Fluconazole (an anti-fungal medication) to treat that ailment. During the remaining twenty-one days after Defendant Guinn prescribed this medication, Plaintiff did not complain about his scalp condition; therefore, no further evaluations were conducted or medications ordered. Although Defendant Guinn's order dated February 21, 2013, indicated that Plaintiff should return to the clinic in three weeks for a follow-up evaluation to determine if Fluconazole was effective in treating his candida folliculitis, Plaintiff was transferred away from Alexander before the follow-up appointment could occur. (Id. at ¶ 14).

Here, Plaintiff has simply failed to raise a genuine dispute of fact as to whether Defendant Guinn was deliberately indifferent to Plaintiff's serious medical needs. That is, the unrebutted evidence shows that at no time did Defendant Guinn disregard Plaintiff's stated symptoms. To the contrary, Defendant Guinn took appropriate action and made professional decisions and treatment plans based on Plaintiff's complaints. (Id.). Plaintiff's mere disagreement with Defendant Guinn's choice of medical treatment does not rise to the level of deliberate indifference, and it was within Defendant Guinn's medical judgment to make decisions regarding Plaintiff's scalp condition and to prescribe anti-fungal medication to treat what he believed was the etiology of Plaintiff's condition.

Furthermore, as with Defendant Kuhne, the evidence on summary judgment shows that Defendant Guinn's actions were not committed with the "culpable state of mind" required for § 1983 liability to result. That is, Defendant Guinn cannot be held liable unless he knew of and disregarded an excessive risk to Plaintiff's health or safety. Here, there was simply never an excessive risk to Plaintiff's health or safety as Plaintiff received prompt treatment for his chronic pain and other medical conditions, and he was being consistently treated by healthcare providers.

Finally, the Court further finds that, as to both Defendants Kuhne and Guinn, Plaintiff has not shown that the alleged deliberate indifference by these two Defendants proximately caused Plaintiff's injury. Plaintiff makes the conclusory allegation in his Complaint that he has suffered "permanent injury which has occured (sic) do (sic) to hair-losage (sic)." (Doc. No. 1 at 10). The medical records, however, which Plaintiff has not even attempted to rebut, do not demonstrate that Plaintiff suffered any injury as a result of any action and/or inaction of Defendants Kuhne and Guinn.

In sum, for the reasons stated herein, Defendants Kuhne and Guinn are entitled to summary judgment on Plaintiff's deliberate indifference claim as to them.

**B. Plaintiff's Claim of Deliberate Indifference to Serious Medical Needs As to Defendant McGallard**

The Court next considers Defendant McGallard's motion for judgment on the pleadings as to Plaintiff's claim for deliberate indifference to serious medical needs against him. To support his claim against Defendant McGallard, Plaintiff alleges that, while he was housed at Alexander Correctional Institution on or about January 31, 2013, he wrote a letter to Defendant McGallard, informing McGallard that Plaintiff was not being "seen" for sick calls, which Plaintiff purports that he submitted on December 15 and 20, 2012, and on January 24, 2012.

(Doc. No. 1 at 9). Plaintiff claims that this letter informed Defendant McGallard about his medical complaints and that Defendant McGallard's failure to respond to the letter demonstrates deliberate indifference. (Id. at 10). Plaintiff also alleges that he has attached a copy of the purported letter. However, Plaintiff failed to provide such documentation to either Defendant McGallard or the Court. In support of his motion for judgment on the pleadings, Defendant McGallard contends that Plaintiff did not exhaust his administrative remedies as to his claim against McGallard and, in any event, the claim is without merit. For the following reasons, the Court agrees with Defendant McGallard on both points.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that under the PLRA, exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id.

In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). In Jones v. Bock, 549 U.S. 199

(2007), the Supreme Court stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  Id. at 211 (citing Porter, 534 U.S. at 524).

In support of his contention that he exhausted his administrative remedies before filing this action, Plaintiff submitted a copy of two inmate grievances from Marion Correctional Institution, and one inmate grievance from Alexander Correctional Institution.  (Doc. No. 1-1 at 1-5; Doc. No. 8; Doc. No. 1-1 at 6-9).  With the at least one of the Marion grievances, Plaintiff submitted a verification page, indicating that this grievance was intended to demonstrate that he has satisfied his inmate exhaustion requirement.  (Id. at 1).  The grievance appears to be dated March 9, 2011.  (Id. at 2). The grievance does not mention Defendant McGallard.  (Id.).  More significantly, the grievance predates the alleged letter which Plaintiff purports to have sent to Defendant McGallard on January 31, 2013, which serves as the basis for Plaintiff's allegations against McGallard.  The second Marion grievance, Doc. No. 1-1 at 4-5, similarly does not mention Defendant McGallard.  Furthermore, the grievance from Alexander, (Doc. No. 1-1 at 6-9), does not mention Defendant McGallard and predates the date on which Plaintiff allegedly informed McGallard of his medical condition by four days.

Plaintiff did not fulfill his obligation under the PLRA to provide Defendant McGallard fair notice of his claim.  A grievance does not have to mention a defendant by name, as long as the grievance gives the defendant fair notice of the claim.  See Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008).  Here, the grievance records submitted by Plaintiff fail to identify any conduct whatsoever by Defendant McGallard and, in fact, predate any of the alleged unconstitutional conduct by this Defendant.  See (Doc. No. 1-1 at 8).  As noted, the grievance record submitted by Plaintiff appears to be dated from 2011, which is nearly two years before the

allegations regarding Defendant McGallard, which purportedly begin on January 31, 2013. The other grievance record from Alexander similarly pre-dates the alleged letter by at least four days. (Doc. No. 1-1 at 6). In sum, the grievances would not have put McGallard on fair notice of any claim of deliberate indifference as to him. Thus, Plaintiff's failure to comply with the PLRA and fully exhaust his administrative remedies is fatal to his claim against McGallard.

The Court further finds that, even if Plaintiff had exhausted his administrative remedies as to Defendant McGallard, Defendant McGallard would be entitled to judgment on the pleadings on the merits of Plaintiff's claim for the same reasons that Defendants Kuhne and Guinn are entitled to summary judgment. That is, the evidence presented on summary judgment by these two other Defendants shows that Plaintiff was properly treated for his scalp condition while at Marion and Alexander. In sum, for these reasons, even if the claim against Defendant McGallard were not subject to dismissal for failure to exhaust administrative remedies, Defendant McGallard would be entitled to judgment on the pleadings on the merits of Plaintiff's claims.[3]

Finally, the Court finds that the only remaining named Defendant in this action is "Dr. Larry Jones," whom Plaintiff identified as a medical doctor previously employed at Alexander Correctional Institution. On April 21, 2016, this Court entered an order for the U.S. Marshal to make reasonable efforts to locate and serve Larry Jones. (Doc. No. 59). On May 25, 2016, the summons was returned as unexecuted, with a notation that NCDPS had indicated that it had no

---

[3] Moreover, even if Plaintiff had shown deliberate indifference as to Defendants Kuhne and Guinn, to the extent that the Plaintiff seeks to bring claims against Defendant McGallard based on his status as a supervisor, McGallard has responded, and Plaintiff has not refuted, that he is not a "Medical Director" but rather the Western Regional Nurse Supervisor, and he was therefore not a supervisor to Defendants Kuhne and Guinn. See (Doc. No. 37).

record of employing a "Larry Jones" at Alexander Correctional Institution. (Doc. No. 61). Because the U.S. Marshal has made reasonable attempts to locate and serve a Defendant Larry Jones, and this alleged Defendant has not been served with process, the Court finds that this Defendant is also subject to dismissal.[4]

## IV. CONCLUSION

In sum, for the reasons stated herein, the Court grants the summary judgment motion by Defendants Kuhne and Guinn, and the Court grants the motion for judgment on the pleadings by Defendant McGallard.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 52), is **GRANTED**,

   Defendant's Motion for Judgment on the Pleadings, (Doc. No. 56), is **GRANTED**,

   and this action is dismissed with prejudice.

2. The Clerk is respectfully instructed to terminate this action.

Signed: June 20, 2016

Frank D. Whitney
Chief United States District Judge

---

[4] This additional defendant would also be subject to dismissal for the same reasons that the Court is granting summary judgment to Defendants Kuhne and Guinn—that is, Defendants have shown that Plaintiff was properly treated for his scalp condition, and the healthcare providers at the prisons where Plaintiff was treated were not deliberately indifferent to his serious medical needs.